In re Griffith, Anario Altman, counsel for Appellant Guy S. Griffith, Joseph and Brenda Samick appearing as Appellees in pro se. Okay, Mr. Altman, do you want to reserve some time for rebuttal? Five minutes, Your Honor. Okay. And remember again that we're relying on you to sort of monitor that. If we see you invading it by great amounts, we'll let you know. Okay? Not yet. Mr. Samick, you can have a seat. You know what? Come on up and make an appearance. Yeah. Come on up and tell us who you are. Good morning, Your Honors. I am the plaintiff in this Appellate for the Adversary proceeding, Joseph Samick.  And will you be handling the argument? Yes. Okay. Thank you very much.  Thank you. All right. Mr. Altman, go ahead. Thank you, Your Honor. So this case presents an interesting timeline that you don't see very often. We have a petition filed by the debtor in 6-26-2029. Plaintiffs filed their case in the California Superior Court in July 10th, 2019. And then plaintiffs request relief, which is granted in September 2019. Then in October 2019, in order to preserve their rights, of course, they filed two adversary proceedings. They were consolidated. And then on June 22nd, we begin trial in the adversary proceeding, which ultimately results in a memorandum of decision. However, the proposed order was objected to that Mr. Samick and Mrs. Samick filed on September 1st, 2023. The plaintiffs were requested by the court to file an order to be lodged, a final order to become the judgment, and that did not happen. February 2024, the plaintiffs pushed forward the state court trial in which witnesses were sworn in. Trial began, and they presented their case, at the end of which the defendant brought a request for non-suit, which was granted as to Mr. Griffith, as to all causes of action. That is a final order. It has not been appealed. Why don't we, I think we've got that part pretty well under control here, okay? Here's the fundamental question I have for you. By the way, let me just confirm something. I didn't see anything in the appellant's brief that challenged any of the findings that Judge Albert made with respect to the A2 portion of the decision. Is that accurate? That is mostly accurate. We are appealing the issue on collateral estoppel derived from the state court. To the extent that he made findings about folks' conduct and whether the A2 standard was satisfied, there's no question that ... You didn't challenge any of that, correct? We did not, Your Honor. Okay. The challenge was whether he was entitled to complete the proceedings. That's really it, right? That is correct, Your Honor. Here's where I need you to give us a hand, because there is issue preclusion and claim preclusion. They ain't the same thing, right? There are different standards. Your brief preceded under a collateral estoppel issue preclusion theory. What are the elements of that? Let me just skip to the final point. Isn't one of the elements that the matter was actually and necessarily decided in the prior action? Correct, Your Honor. Okay. Then as you proceed through the argument, you seem to be slipping into a claim preclusion argument when you cite Roybal and other cases for the proposition that in the res judicata slash claim preclusion context, basically a default or other procedural terminations can be a final judgment, right? Which are you proceeding under? If you're proceeding under both, please explain how that works, because if you're proceeding under collateral estoppel issue preclusion, I don't see how you can get there from what happened in the state court. There was no actual determination of the issues in the state court. We'll get into why in a minute or two, but without getting into who said what to whom in the state court, which is a whole other issue, just doctrinally, how do you want us to use collateral estoppel to get where you want us to end up? So, in the state court, you have a determination on a non-suit, which goes under California law to all of the elements of the causes of action that were alleged. So all of the elements that were there, all the facts that were alleged in the complaint were deemed not applicable to Mr. Griffith, that they did not substantiate a judgment. So it's an unusual situation because normally you'll see a default judgment entered and there's a question as to whether it's actually litigated. Here there was a trial. People showed up at trial. They testified. But who was it who presented a case for the Sammocks in connection with claims against Mr. Griffiths? Did that happen? That did happen. I think he was, Mr. Sammock was pro se- Well, I'm sorry. They presented a case in state court against Mr. Griffiths? That's correct. But he had been dismissed. He'd been dismissed. I mean, my goodness. Can we get on the same page here? He was still a litigant at the time of the state court trial in February 2024. All right. Was he or was he not dismissed? The theory, by the way, that what had occurred before those three exceptionally long days in front of Judge Albert in that trial, and by the way, I've read that transcript more than once, wasn't the disposition in the state court that Mr. Griffiths was basically dismissed from the Sammocks state court complaint because there had been a prior determination? That was not in the final ruling. He was dismissed on, he was dismissed from the case on the non-suit motion itself at trial. Okay. Let me, let me try this again, okay? Was there or was there not a request that Mr. Griffith be dismissed from the state court action because there had already been a trial of the same issues between the same parties before Judge Albert? There was a request to dismiss him from the trial itself based on the elements presented at state court trial. There was, and so I'm clear, there was a discussion in the state court proceeding also about whether to dismiss him because of the bankruptcy proceeding that had been ongoing. But at the state court trial itself, on the motion for a non-suit, it was as to all- Okay. Let me, let me, let me ask you this then, okay? We're getting into things that happened in state court. I don't, I mean, tell me how the record here is going to support any of the things you're saying other than you think there was a non-suit. Well, we have the, on docket number 259, we have in there a copy of the state court order, which provides in, I'm paraphrasing a little bit, that Mr. Griffith is dismissed, the non-suit is granted, Mr. Griffith is dismissed as to all causes of action. Well, if he was dismissed because the matter had been already determined by Judge Albert, who cares about the rest? What's the point? Why is it, why is it, my problem is I just, I can't pull apart, and I think my panel mates may be in the same position. You seem to be relying on collateral estoppel and res judicata bolt, and it, it don't work that way. So, so, you know, tell me how you get where you want to be by, by issue preclusion, where the issues were not tried in the state court. Well, again, the issues were tried in the state court. Mr. Pl, Mr. Samek went through the entire presentation of his case. Against Mr. Griffith? Against Mr. Griffith. Oh my goodness. Where, where on the record can we find that? Nowhere, right? Is that, is that in the record now? That's in the court proceeding itself, in number, in docket number 259 we have an exhibit which is the ruling, which. That's the ruling. Does that indicate that there actually were issues presented and then testimony presented against Mr. Griffith? I mean this is directly contrary to what seems to have happened at the beginning of the trial. I, I, I believe that, I believe that the doc, the exhibit to number 259 does include a description of what went on at trial. Okay. Witnesses, things like that. Um, and then at the end of that, that's when the motion for non-suit was brought. Okay. I, I, I, if I were you, I'd just continue. Okay. Very good. Um, we'd also, we'd also argue, Your Honor, that there was an abuse of discretion in finding plaintiffs as Investor J. Uh, the court recognizes in his memorandum, Judge, the late Judge Albert recognizes in his memorandum of decision that there is no actual evidence that connects the plaintiffs to being exhibit, uh, Investor J, uh, but that it's inconceivable that they could not be Investor J. I think where the court is stating that it's obvious that there is no evidence that actually connects these two. Well, didn't, I mean, sorry to interrupt you, but didn't he also go on to say, I'm not relying on that. I'm going to independently determine issues of, of securities law violations. He also argued that, uh, it was, well, I didn't argue anything. He ruled. Okay. All right. Well, I mean, didn't he go out of his way to say, I'm not relying on the, on the, you know, the, the privity Investor J argument. He did, but at the same time, he spent a lot of time going out of his way to talk about the connection with Investor J. So I am just covering that on. Well, well, did you, did you challenge in any way the independent findings and conclusions that he, that he seemed to come to with respect to the securities law violations? Independent of the privity Investor J issue, are those, I didn't see those being challenged in your brief. Is that right? At trial, but not after trial. Okay. All right. Well, you're at five minutes. If you want to stop now, you can. If you want to keep going, that's totally up to you. Understood. Last issue is, has to do with section 308A of the Sarbanes-Oxley Act. And again, this has to do with if the plaintiffs are insisting that they are investors, that the, their remedy is through the Sarbanes-Oxley Act is through the SEC, which had come to a judgment as collecting on behalf of all of the parties. And you can't be, you can't proceed both as an investor and also with your own independent cause of action. And unless you have any questions with that, I would arrest you. Okay. Anybody? Judge Newman? No. Judge Gant? No. Okay. Well, you still have four minutes, so we'll hear from the CEMEX and then you can make a rebuttal. All right. Thank you. Thank you. Come on up. I'd like to read off mine if I could. The timer did not reset. Oh, you've got 15. There you go.  Okay. Okay. Your Honors, I'm the appellee and prevailing creditor in the adversary proceeding to Bankruptcy Courts July 28, 2023 Memorandum of Decision after trial, docket number 216, found the appellant debtor's debt non-dischargeable under 11 U.S.C. 523A, 2A, and A-19 following a full trial. The ruling was final, supported by detailed findings, and remains legally intact. Docket number 300 is the monetary amount of the judgment entered on March 10, 2025. Federal Rule of Bankruptcy Procedure 8002A1 requires a notice of appeal be filed within 14 days after the judgment order decree is entered on the docket. Because the Bankruptcy Courts Memorandum of Decision document 216 was entered on July 28, and no qualifying post-trial motion under Rules 7052, 9023, or 9024 were filed to toll the deadline, the appeal window closed or should have closed. Did you make this argument in your appellee's brief? I'm not sure. Okay. I don't remember that you did. If you're arguing this is untimely? Yes. Okay. Then we wouldn't have jurisdiction. That's a pretty big deal. I don't remember seeing that in the appellee's brief. I may not have.  Use your time any way you want, but I just want to let you know that, I mean, if that were the case, we'd have to sort of, we'd have no ability to determine this. We would not have jurisdiction, okay? Okay. Okay. Which, the appellant failed to file a notice of appeal within the 14-day window following the Bankruptcy Courts July 28 of 23 Memorandum of Decision after trial. The court's ruling resolving the dischargeability was independently final and appealable. The appeal now before this court is untimely and procedurally barred under 8002. The March 27th judgment merely quantified liability. It did not reopen the, I'm sorry, the March 10th judgment quantified liability. It did not reopen the dischargeability issue or restart the clock. The July of 23 decision. Well, the court did subsequently enter findings and conclusions well after the MEMDAC, right? Okay, it did restart the clock. It did do that, okay. Well, the appellant is now, now attempts to challenge that outcome by invoking a subsequent state court dismissal and mischaracterizing the SEC judgment. These arguments are procedurally incoherent and legally unsupported, as you guys were discussing with the appellant's counsel, okay. The prior July 28 dischargeability ruling was final and appealable under FRBP 7054 and FRCP 54B. The appellant failed to file a notice of appeal within the 14-day window, and he could have appealed the decision of the judge at that point in time. And I'm a little bit confused as to whether he's just appealing the dollar amount, which he agreed to. I believe it's document 287 or 284. The 14-day window required by rule 8002 should have been exercised in August of 2023. Okay, can I skip to something else? Yes, sir. I think, I mean, we've heard this a time in this argument. So a couple of things. First of all, what I think I read in the brief and what I think you just indicated was that for purposes of what needed to happen between the MEMDEC and the judgment, in your view, it was simply a math issue, right? I mean, there were two big transactions complained of. One was the RSTI and the other one was Bridgegate. Yes. And at the end of the day, once Judge Albert said Bridgegate is not going to, there won't be any liability there, it's simply a matter of, from the complaint, taking the different elements of damages and just doing a simple subtraction. That's your theory, right? Correct. Okay. So the judgment was nothing more than subtraction? Correct. Okay. All right. Secondly, do you want to comment at all, I mean, I feel a little bit perilous getting into what happened in State Court, but my sense is that your understanding of that is a little different, perhaps, from the Appellant's counsel. Yes, Your Honor. So in State Court, when we were preparing the trial briefs and prior to that, Mr. Griffith became a mere witness. Mr. Griffith's trial brief, I believe it was, I gave it to you on judicial notice, I don't know if you looked at it, Mr. Griffith himself also discussed with me in emails and filed a trial brief. There was no causes of action against him, just his partner's co-defendant, Martin Russo, which was the financial advisor that facilitated this fraudulent investment. I think we're on kind of thin ice here, generally, because we only have so much in the record about this, but to the extent that you simply had a different understanding of the legal impact of that, I want to give you a chance to tell us what you think that is. That's all. Well, Mr. Griffith invoked res judicata, therefore, he became a mere witness and was dismissed under res judicata by the court. Prior to the commencement of the trial? Right, he remained as a witness, or during the trial. So it was your understanding that he knew about the determination in the bankruptcy court, moved the State Court to let him out of the State Court proceeding, you ultimately agreed to let him go since you had a determination in the bankruptcy court, and that's when you allowed the non-suit to enter, to be entered, effectively leaving your claims only as against Mr. Russo. Correct in part, but it was not a non-suit. They keep saying non-suit. The non-suit was denied and it was dismissed. The Judge Harmon requested that I dismiss him under res judicata because of the brief and because we already had a judgment, and I was told this is a one-judgment court system. I mean, technically, you didn't have a judgment at that point, and I know your point is you didn't need one, the mem dec was final enough. So I'm not going to argue with you about that, but it's a little curious that there seemed to be lots of references to judgments in the State Court when there really wasn't quite one yet in the bankruptcy proceeding, right? Understood. No, but I know you're making another argument. I'm hearing you. In that instance, Mr. Griffith denied. We went back and forth two or three times. He put a stay on the case. I had to terminate my attorney for not filing the proper paperwork and double charging me for stuff that he'd already been presented, and I had to take over the case myself. I couldn't afford further counsel. That was with respect to the bankruptcy and the delay between. That was in the bankruptcy case, and that's a partial explanation for the delay between the memorandum decision and the ultimate judgment. Yes, Your Honor. Okay, thanks. Appreciate it. So, but the appellant's misuse of res judicata and collateral estoppel, the appellant is attempting to use a subsequent Superior Court case dismissal based on res judicata to invoke collateral estoppel against the bankruptcy court's prior 523 judgment, although you're saying it may not have been a judgment because it wasn't signed. But Mr. Griffith, now in his fifth bankruptcy filing at the age of 46, delay tactic after delay tactic after delay tactic. Three judges have found now against him for fraud, and of course, that's what he does. He builds a business under an LLC, attaches it to another LLC, closes it down, steals people money, and weaponizes the court system. No offense. We can't make any findings of fact here, so I know that you believe that passionately, but. Okay. Also back to the dual misuse of the SEC consent order, collateral estoppel, appellant's position is internally inconsistent. On one hand, he claims the SEC judgment offers no collateral estoppel because it was entered by consent. On the other, he argues that the same judgment somehow precludes the appellee and prevailing creditor, myself, from independently enforcing my own non-dischargeability claim. Both arguments fail as far as I'm concerned. The appellant cannot now disavow the SEC order he consented to, and to avoid trial. He accepted the findings, and those findings support, but they do not dictate the bankruptcy court's judgment. The adversary decision stands on its own merits and should be affirmed. Well, I mean, it's your position that Judge Albert made independent findings with respect to both A2 and A19. Exactly, and the record also shows that. Okay. You know, in Ray Mason 709 F2D 1313 Ninth Circuit 1983, the court emphasized that finality is determined by substance, not labels. The SEC order was entered by consent, but it remains a valid administrative determination under 523 A19. Now, going back to, sorry about that. The timeliness of this, the prior July 28th of 23 dischargeability ruling was final and appealable, like I said, under 7054 and FRCP 54. The appellant failed to file a notice of appeal within the 14-day window, okay? However, the March 10th, 2025 monetary judgment merely quantified the damages. It did not reopen dischargeability, and this completely aligns with the holding in In Re 928 F2D 304 Ninth Circuit 1990, which the Ninth Circuit held that a judgment is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment, which is exactly what the July 28th, 2023 memorandum of decision did. And also, in the holding in Ray Belley 268 BR 851 Bankruptcy Appellate Ninth Circuit 2001, the court confirmed that a dischargeability ruling is final and appealable even if the monetary amount is determined later, and it constitutes a final judgment for purposes of Rule 8002. The debtor missed the deadline, and the appeal is untimely. The July 23rd memorandum of decision resolved dischargeability in full. In In Re Slimick and In Re Belley, the ruling was final and appealable. The March 25th judgment merely, the March 2025 judgment in the state court for his dismissal merely, or I'm sorry, the March 25th judgment in the bankruptcy court merely quantified the damages. That's it.  Are you ready to submit on that basis? Sorry. Also. Oh, I'm sorry. I interrupted you. Go ahead. I believe document 284 was the appellant and his attorney's agreement to the amount of which is a record submitted by the appellant is the amount of the judgment they determined it should be, which aligned with the amount that I determined. Okay. Any questions, Judge Newman? No. No questions, Judge Gannon? Okay. Thank you very much. Appreciate it. Thank you, sir.  That's all right. Okay. Mr. Alban, you've got, I think, a little over four minutes. Yes. Thank you, Your Honor. Okay. Go ahead. As a preliminary matter, we wanted to take a moment to object to the new submission that the appellee has made today and also at the time they filed their responding brief. Yeah. Not issued and not mentioned in their issues. If you want to leave it at that, we can take it from there. Got it. Okay. Thank you. The one last thing, as I just want to read from docket number 259, is in regards to the and not a lot, just in regards to the collateral estoppel issue. So this is the ruling from the court, from the state court, after 3 p.m. that day when they had been in trial. The court says, we're hearing defendant Guy Griffith's motion to be dismissed. Court makes findings. The court's tentative ruling is to deny. Motion for dismissal by defendant Guy Griffith is then withdrawn. Plaintiff rests their case. Motion by counsel for defendant Martin Russo and defendant Guy Griffith regarding non-suit is called for hearing. Argument presented by counsel and plaintiffs. Oral motion by plaintiffs read dismissal. Defendant Guy Griffith is called for hearing. Plaintiff requests to dismiss defendant Guy Griffith from all claims. Entire action with prejudice. Court makes the following order. As a matter of California law, Guy Griffith, as to all of these causes of action, is now dismissed. And this is a situation, it is procedural, but at the same time, it is substantive. Because you have... Well then, can I, can I, let me help you out here, I think, okay? Now we're talking about claim preclusion, right? We're not talking about, and you didn't argue that in the brief, but let's say you did. Go ahead and play it forward as claim preclusion. Why would it make sense? It would make sense because all of the underlying elements alleged in each of the claim in the complaint, under California law, when you have a dismissal of this nature with prejudice, all of those elements are kicked out now. Well, let's go back to some basics, okay? The point of, what's the policy behind claim preclusion? To eliminate duplicative and needless litigation. Okay. Well, how is this duplicative? Because Judge Albert suffered through a three-day trial. He did. Okay. I mean, how would giving issue preclusion affect to what happened in the state court avoid anything duplicative? He already had the trial. He already had the trial. We already had the trial, but the judgment was not final. And it was more than just an administrative issue or a clerical issue. Damages had not been decided. While the word bifurcate was never utilized in the adversary proceeding, essentially this proceeding was bifurcated into a liability issue and then a damages issue. We have absolutely no evidence of that whatsoever in the record. Zero. Okay. I would, if you want to keep arguing about why res judicata would be applicable here, you can. But the problem is, res judicata is meant to prevent a subsequent litigation about a matter that was or could have been brought in a prior piece of litigation. I just don't see how that fits the scenario here at all. So help me out with that part. I have nothing further to add. Okay. All right. If you want to submit on that basis, I'll ask my colleagues if they have any questions. Judge Niemann, no? No. Judge Gant, how about you? No. Okay. Thank you both for your very good arguments. And I know this is, notwithstanding the sort of hot bench you got here, Mr. Altman, I very much appreciate your attempts to articulate something in a really different scenario than we normally see. So it's very helpful. And thank you so much. Okay. The matter is submitted, and we'll get you a decision as soon as we can. Thank you. Okay. Thank you both. And thank you to the SAMICs as well. Thanks. Okay. Thank you. No, no problem at all. Okay.
judges: Lafferty, Gan, and Niemann